U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the order of the Court.**

**Signed February 24, 2006**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BILLIE WAYNE SPRADLING JR., | § | CASE NO. 02-50004-RLJ-7 |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| DEBORAH J. PENNER, CHAPTER 7 | § | |
| TRUSTEE | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-5009 |
| | § | |
| AMCOT, INC., BILLIE WAYNE | § | |
| SPRADLING JR., STEVE CLAUS, and | § | |
| CLAUS & ASSOCIATES, P.C., | § | |
| Defendants | § | |

## <u>MEMORANDUM OPINION</u>

Trial was held on the complaint of plaintiff Deborah J. Penner ("Penner"), chapter 7

trustee in the Billie Wayne Spradling Jr. bankruptcy case, seeking an accounting, turnover, and/or

money judgment against the defendants AMCOT, Inc., Billie Wayne Spradling Jr. (sometimes

"Spradling"), Steve Claus, and Claus & Associates, P.C. The claims against AMCOT, Inc. and

Spradling were previously disposed of by default judgment entered against such parties on October 4, 2005.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b).  Penner and the defendants remaining at time of trial, Steve Claus and Claus & Associates, P.C., stipulated in their joint pretrial order to the Court's jurisdiction and consented to the trial and entry of a final order by this Court.  *See* Joint Pretrial Order.  This Memorandum Opinion contains the Court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

**Statement of Facts**

1. Background

In November of 1992, American Cotton Suppliers International, Inc. ("ACSI"), a Texas corporation, and Compagnie Cotonniere, Inc. ("Copaco"), a Delaware corporation, formed a joint venture for the purpose of engaging in the buying and selling of cotton.  ACSI was formed by Billie Wayne Spradling Jr. and his brother, Charles Spradling, who were the sole initial shareholders of ACSI.  Charles Spradling was the president and Billie Wayne Spradling Jr. was its vice president.  Copaco was a Delaware corporation owned by a French limited company known as Compagnie Cotonniere, S.A.  Under the terms of the joint venture, Copaco provided the financing for the joint venture's business operations and ACSI provided the management, expertise, and personnel to conduct the day-to-day operations.

The joint venture agreement further provided that Copaco and ACSI would each share fifty percent of losses incurred by the joint venture.  To secure ACSI's potential liability for losses, both Billie Wayne Spradling Jr. and Charles Spradling signed written guarantees obligating themselves to be jointly and severally liable for ACSI's share of any losses.  By the mid-1990's,

the joint venture started experiencing financial problems resulting in huge losses for the joint venture. By the end of 1999, the liabilities of the joint venture exceeded its assets by $12.9 million. The joint venture was unable to obtain additional funding for its operations and, on July 30, 2000, ACSI and Copaco agreed to terminate the joint venture.

2. <u>Spradling Doing Business Under AMCOT-ACSI II</u>

Following the termination of the joint venture, Spradling continued on in the cotton trading business, along with his father and brother, under the name AMCOT, Inc. d/b/a ACSI II ("AMCOT-ACSI II"). AMCOT-ACSI II operated out of the same building as ACSI, had the same customers and used the same suppliers of cotton as ACSI, employed many of the same employees, and held itself out as a cotton merchant, agent, broker and exporter – just as ACSI did. AMCOT-ACSI II used the same logo as ACSI and its officers were advertised to be Billie Wayne Spradling Sr., chairman, Billie Wayne Spradling Jr., president/manager, and Charles Spradling, vice president.

AMCOT-ACSI II had been incorporated under the name AMCOT, Inc. in September of 1978. However, its charter was forfeited in June of 2000 and continued in that status until December of 2000. On December 28, 2000, it filed both an application to reinstate its corporate status and an assumed named certificate for the AMCOT-ACSI II name. The corporation, AMCOT, Inc. d/b/a ACSI II, was formally reinstated on January 4, 2001. The reinstatement of its charter and the filing of the assumed name certificate were accomplished in contemplation of Spradling's acquisition of the outstanding stock of AMCOT-ACSI II as, on January 25, 2001, Spradling purchased all of the issued and outstanding shares of AMCOT-ACSI II from an individual named Emory Cassell. Cassell resigned as president of AMCOT-ACSI II and Spradling

- 3 -

was elected as the sole director of the company. In exchange for the purchase of AMCOT-ACSI II's stock, Spradling signed a promissory note in favor of Cassell, dated January 25, 2001, in the principal sum of $75,000, providing for annual "interest only" payments for a period of ten years, to be followed by a balloon payment for the principal balance.

3. Bankruptcy of Spradling/Continued Evolution of AMCOT-ACSI II

On January 2, 2002, Copaco filed an involuntary petition under chapter 7 of the Bankruptcy Code against ACSI (not AMCOT-ACSI II), Spradling, and Charles Spradling. After a lengthy trial before this Court, the Court issued its memorandum opinion on September 30, 2002, directing that relief under chapter 7 should be ordered against ACSI, Spradling, and Charles Spradling.

Shortly after the filing of the involuntary petition, on January 17, 2002, AMCOT-ACSI II was converted to a limited partnership named "ACSI II, Ltd." The entity Algedon L.L.C. became the general partner of the limited partnership. Algedon L.L.C., as the general partner, owned 2% of ACSI II, Ltd. with Spradling owning the remaining 98% of the limited partnership interests. Spradling also owned 100% of Algedon L.L.C. Spradling therefore had total control of ACSI II, Ltd.

Spradling filed his bankruptcy schedules and statement of financial affairs on October 30, 2002. At question 12 under schedule B, where Spradling was required to list his ownership of stock, he references that he "may still hold an interest in Spradling Cotton Company, Spradling & Sons, Inc., the Spradling Group, Inc., and one-third interest in American Cotton Suppliers International, Inc." He does not mention an ownership interest in any entity under the name of AMCOT, Inc., ACSI II, or Algedon, L.L.C. However, at question 2 of schedule B, where it calls

- 4 -

for the listing of checking, savings, and other financial accounts, he references an ownership interest in "ACSI II, a Limited Partnership by and through AMCOT, Inc. and Algedon, Inc. 100% interest." He then states "[m]arket value speculative and [s]cheduled as not having any market value . . . ." His schedules list Emory Cassell as a secured creditor holding a security interest in 10,000 shares of stock in AMCOT, Inc., securing a $75,000 claim incurred January 25, 2001. Though listed as a secured creditor, he recites that the unsecured portion is the amount of the debt, i.e. $75,000. The statement of financial affairs reflects Claus & Associates, P.C., of which defendant Steve Claus is the principal, as holder of various books and records of Spradling. Finally, the schedules were filed with a "non-certification of counsel," wherein counsel states that he does not certify to the accuracy of the schedules and statement of financial affairs.

The bankruptcy filing of the two Spradlings and ACSI did not halt Spradling's practice of moving his failed business operations to yet another newly formed entity. On December 18, 2003, ACSI II, Ltd. was liquidated and terminated with the assets transferred to an entity named "Amercot, L.L.C." owned 100% by Billie Wayne Spradling Sr.

4. <u>Steve Claus</u>

Defendant Steve Claus is a practicing lawyer and accountant in Lubbock, Texas. He owned his professional corporation, Claus & Associates, P.C., prior to the time it was converted to a limited liability partnership at the beginning of 2005. His primary areas of practice as a lawyer in Lubbock have been estate planning, business planning, business structuring, and civil litigation. He also does financial compilations and tax returns for certain of his clients. Claus received his undergraduate degree with majors in accounting, finance, and economics from the University of Cincinnati in 1972, and received his certified public accountant license in 1976. He

- 5 -

received his law degree from Chase College of Law in 1978.  He holds licenses to practice law in

Ohio and Texas; he is admitted to practice in the federal bars for the Southern District of Ohio,

the Northern District of Texas, Tax Court, and the Fifth Circuit Court of Appeals.  After he

graduated from law school he worked for large accounting firms such as Deloitte, Haskins & Sells

in its offices in London and Saudi Arabia; for Peat Marwick & Mitchell in Cincinnati; and for

Arthur Young in Dallas, Texas, Chicago, Illinois, and Brussels, Belgium; and Coopers & Lybrand

in its Chicago office.  While working for these accounting firms, he was doing tax work and

business and estate planning.  Claus has taught accounting classes at the University of Maryland

and City College of Chicago.  He also taught law classes at Chase College of Law and certain

continuing legal education classes at Texas Tech University.

        During the mid-1990's, Claus began representing Billie Wayne Spradling Sr., Billie Wayne

Spradling Jr., and Charles Spradling in connection with an IRS examination of Spradling Group,

Inc., a closely-held corporation owned by Billie Wayne Spradling Sr. and his sons.  He also

represented the individuals on tax examinations and prepared the tax returns for Spradling &

Sons, Inc., Spradling & Sons partnership, and as Spradling Cotton Company.

        Claus performed legal and accounting work for Spradling in connection with his

ownership and operation of AMCOT-ACSI II.  He prepared financial compilations and tax

returns for AMCOT-ACSI II.  Claus was aware that Spradling set up a "trust account" that used

funds transferred from AMCOT-ACSI II to pay Spradling's personal expenses and from which he

took numerous personal draws.  Claus knew that the trust account was set up to avoid offsets

against AMCOT-ACSI II's account at Plains National Bank which arose by virtue of indebtedness

owed by AMCOT-ACSI II to Plains National Bank.  Claus's representation of Spradling and

AMCOT-ACSI II, and AMCOT-ACSI II's successors, continued through the filing of the involuntary bankruptcy petitions and up through the date that this action was filed against him. Claus did not, however, represent Spradling in connection with his bankruptcy case.

Claus performed the legal work for Spradling in connection with the conversion of AMCOT-ACSI II to ACSI II, Ltd. and the establishment of Algedon, L.L.C. as its general partner. Claus learned of the impending involuntary bankruptcy petitions against the Spradlings and ACSI in December of 2001. Claus prepared and filed the appropriate papers with the Office of the Texas Secretary of State on January 17, 2002, to form the limited partnership of ACSI II, Ltd. Claus was therefore aware that Spradling effectively owned all the interest of ACSI II, Ltd.

5. Barrentine Lawsuit and Settlement

In December, 2002, Claus was contacted by Spradling concerning a claim of AMCOT-ACSI II against Barrentine Company. AMCOT-ACSI II (then AMCOT, Inc.) had entered into a joint venture arrangement with Barrentine Company, a California corporation, in early December, 2000. Apparently a dispute arose between Barrentine Company and AMCOT-ACSI II regarding the division of the assets and liabilities of the joint venture. On April 3, 2003, Claus filed a lawsuit in the 237th District Court of Lubbock County, Texas, on behalf of AMCOT-ACSI II, styled *AMCOT, Inc. v. The Barrentine Company*. In the lawsuit, Claus alleged various causes of action on behalf of "AMCOT, Inc., a Texas corporation, d/b/a American Cotton Suppliers International-II, a/k/a ACSI-II, predecessor to American Cotton Suppliers International-II, Ltd., a Texas Limited Partnership."

On May 5, 2003, Claus filed a motion to dismiss the Barrentine lawsuit on behalf of ACSI II, Ltd.[1] asserting that, on May 1, 2003, the parties had entered into a settlement agreement thereby resolving the dispute between them. By the terms of the settlement, Barrentine paid ACSI II, Ltd. $89,000, which funds were wired to ACSI II, Ltd. in consideration for dismissing the suit. An order dismissing the Barrentine suit was entered by the state court on May 12, 2003.

As stated, the $89,000 in settlement funds were sent to ACSI II, Ltd. With the exception of $40,000 paid to "TRESCO Cotton," the balance of the $89,000 was used to pay personal debts of Spradling. As an attorney, Claus knew that, from the inception of Spradling's bankruptcy filing, Penner as trustee was effectively the owner of the stock of AMCOT, Inc. d/b/a ACSI II. Claus did not specifically advise the trustee of the existence of the claim against Barrentine, the settlement with Barrentine, or that the funds paid by Barrentine were used, for the most part, by Spradling personally. Claus was paid $4,000 for his legal services in connection with the suit. He continued to prepare monthly statements for Spradling and used the financial information to prepare the final accounting for ACSI II, Ltd. Claus handled the termination of ACSI II, Ltd. on December 18, 2003, as well as the transfer of the remaining assets to a newly formed limited liability company, Amercot, L.L.C., which was wholly owned by Spradling's father. Claus did not advise Penner of the liquidation and termination of ACSI II, Ltd., which he admitted at trial was a mistake given Penner had succeeded to Spradling's ownership of AMCOT-ACSI II.

6. Operations of AMCOT-ASCI II and Successor Entities

---

[1]By the time the lawsuit was filed, AMCOT-ACSI II had been converted to the limited partnership ACSI II, Ltd.

Despite Spradling's representation in his bankruptcy schedules that his interest in AMCOT-ACSI II was of no value, the company was involved in extensive ongoing operations. It had existing cotton contracts and an unsecured line of credit of $1.275 million with the lender Tresco. Following the meeting of creditors held in the Spradling bankruptcy case, Penner met with Spradling, Spradling's attorney, and an individual named Monte Mount. Mount apparently did business as Tresco. Mount wanted Penner's authority to pursue certain pending cotton contracts. The trustee declined to give her consent because of Mount's insistence that the estate release Mount of any and all claims it might have against him.

The balance sheets and tax returns of AMCOT-ACSI II and its successor entities reveal extensive ongoing operations and transactions from 2001 through 2004:

- The December 31, 2001, balance sheet for AMCOT-ACSI II reflects a negative equity of approximately $520,000 on sales of $5.1 million. Ex. 37. The December 31, 2002, balance sheet reflects a negative net equity of approximately $643,000 on income of $9.3 million. Ex. 38.

- The 2001 1120 tax return for ACSI II reflects gross receipts of $11.5 million. Ex. 27.

- The December 31, 2001, and December 31, 2002, balance sheets both reflect a liability to Tresco of $1.275 million. Exs. 37, 38.

- A September 30, 2001, accrual basis balance sheet for AMCOT-ACSI II reflects a positive equity of $11.9 million with an $11.3 million account receivable. Ex. 13.

- A January 31, 2004, balance sheet for Amercot, L.L.C. reflects a liability to Tresco of $1.352 million and a receivable owing from Spradling of $1.264 million. Ex. 40.

- The 2003 1120 return for ACSI II, Ltd. reflects a profit of $127,760 on approximately $25 million in transactions. Ex. 30.

- The 2002 balance sheet for AMCOT-ACSI II reflects an account receivable from Spradling of approximately $545,000; the 2003 balance sheet for AMCOT, Inc.

reflects an account receivable owed by Spradling of approximately $688,000.  Exs. 38, 39.

•	The Tresco debt throughout the years 2001 through 2004, with the exception of January 31, 2004, remained at $1.275 million despite being characterized as a "line of credit."

## Discussion

Penner asserts five claims in this adversary proceeding.  First, she seeks an accounting of the $89,000 paid on the Barrentine settlement, contending the suit and the settlement funds are property of Spradling's bankruptcy estate.  Second, she requests a turnover order as to the $89,000.  Third, she seeks a money judgment of $89,000, plus costs and attorney's fees, against Spradling, AMCOT-ACSI II and its successor ACSI II, Ltd., and Claus.  Fourth, she contends Spradling and Claus committed fraud and breaches of fiduciary duty and, joined with her claims of fraud and breach of fiduciary duty, that Spradling used AMCOT-ACSI II and ACSI II, Ltd. as his alter egos.  Fifth, Penner asserts she is entitled to reasonable attorney's fees.  *See* Pretrial Order at 3.  As Penner's claim for a money judgment is remedial, it must be supported by the substantive causes of action asserted in her fourth claim.

Exhibit 23, a copy of which is attached hereto, provides a full accounting of the disposition of the $89,000 obtained in connection with the Barrentine settlement.  As previously noted, except for the $40,000 payment to Monte Mount's company Tresco, the majority of the funds were used for the personal benefit of Spradling.  The $4,000 paid to Claus can reasonably be characterized as payment for attorney's fees incurred by ACSI II, Ltd.  Exhibit 23 provides the requested accounting.

Concerning the claim of turnover, Penner contends she can, as trustee, avoid a post-petition (in this case post-filing of the involuntary petition) transfer of property of the bankruptcy estate. Penner specifically requests a turnover of the $89,000. However, the $89,000 was paid out as reflected in Exhibit 23 attached hereto. There is no evidence that Spradling, Claus, or AMCOT-ACSI II is presently in possession of the $89,000 or a portion thereof. There are, therefore, no tangible assets in the possession of any of these parties that can be made the subject of a turnover order. As noted, Penner's turnover request is premised upon a finding that the $89,000 is (or was) property of the bankruptcy estate. To constitute property of the estate, Spradling must have held a legal or equitable interest in the subject property as of the commencement of the case. 11 U.S.C. § 541(a)(1). In support of this argument, Penner contends that the Barrentine cause of action arose when Spradling was conducting business as a sole proprietorship and, alternatively, that AMCOT-ACSI II was Spradling's alter ego. Either theory, if established, may result in the Barrentine suit and proceeds becoming property of the estate. The Court will discuss below Penner's claim of sole proprietorship and alter ego. They are not relevant on the turnover issue because the subject property, the $89,000, is gone.

The Court has previously issued a default judgment, jointly and severally, against AMCOT-ACSI II and Spradling in the amount of $89,000, plus costs of court. The default judgment against Spradling and AMCOT-ACSI II was premised upon Penner's complaint that specifically requested an accounting and turnover of the $89,000, or, alternatively, a money judgment in such amount. The complaint did not seek recovery based on fraud or breach of fiduciary duty. These issues were raised for the first time in the parties' pretrial order. The complaint did allege that Spradling used AMCOT-ACSI II as his alter ego but did not specifically

- 11 -

request a finding of alter ego and none was made by the default judgment. As the requested accounting and turnover relief are moot, the remaining question before the Court, therefore, is whether a money judgment against Claus is appropriate.[2] The remaining legal theories are set forth in Penner's fourth claim by which she joins together against both Spradling and Claus claims for fraud, breach of fiduciary duty, and alter ego. A claim of alter ego does not create a substantive cause of action against either the corporation or the control person or entity. *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987). The Court must first determine whether Claus is liable to Penner under Penner's theories of fraud and/or breach of fiduciary duty. Penner fails on any direct claim of fraud or breach of fiduciary duty against Claus. As the attorney for either Spradling or AMCOT-ACSI II, Claus had no duty to Penner. Claus and Penner were not in privity to one another and Claus made no affirmative representation to Penner.

Penner's claim is a bit more complicated than this, however. Penner contends that Claus is derivatively liable to her because of *Spradling's* fraud and breach of fiduciary duty, and Claus's joinder in – his aiding and abetting of – such fraud and/or breach of fiduciary duty. The difficulty here, apart from the question of whether it is even appropriate for the Court to render a decision regarding a party that has previously been defaulted out of this lawsuit, is specifically identifying the conduct that gives rise to the alleged fraud or breach of fiduciary duty. The allegations of the complaint, the claims as identified in the agreed pretrial order, and the evidence presented at trial all center on the Barrentine lawsuit and settlement. Though not explicitly argued by Penner,

---

[2]Penner's claims against Claus and his professional corporation, defendant Claus & Associates, P.C., are based solely on Claus's conduct and involvement with Spradling. Claus was presumably operating through such entity.

Spradling's alleged concealment of the Barrentine lawsuit is the product of Spradling's underlying

failure to disclose his interest in AMCOT-ACSI II. Spradling's duty to disclose his interests in

AMCOT-ACSI II in his bankruptcy schedules cannot be questioned. *See Matter of Hargis*, 887

F.2d 77 (5th Cir. 1989) (a debtor owes a fiduciary duty to the bankruptcy estate regarding estate

property).

The evidence can support a conclusion that Spradling failed to properly disclose his

ownership of AMCOT-ACSI II in his bankruptcy schedules. He did not identify his ownership at

the place in the schedules where it is specifically requested, question 12 under schedule B. A

vague reference to his interests in AMCOT-ACSI II was made at question 2 of schedule B which

calls for the listing of checking, savings, and other financial accounts. Spradling's failure to

adequately disclose his interests in AMCOT-ACSI II in his schedules can be construed as

misleading. At the time, AMCOT-ACSI was conducting millions of dollars in business

transactions, albeit operating at a loss. The Court can certainly infer that Spradling purposefully

downplayed his interest so Penner as trustee would not meddle in AMCOT-ACSI II's business.

The Court could also infer fraud from this conduct. The Court cannot, however, infer any

involvement on Claus's part in Spradling's failure to properly disclose his interests in AMCOT-

ACSI II on his bankruptcy schedules. Claus did not represent Spradling in connection with the

bankruptcy and was not involved in the preparation of Spradling's schedules. In addition,

Spradling's bankruptcy counsel would not certify to the accuracy of Spradling's schedules,

indicating Spradling could not be trusted by his own attorney.

Penner's basic contention is that Spradling, and Claus through Spradling, defrauded her or

breached a fiduciary duty owed to her or the bankruptcy estate by failing to disclose and account

- 13 -

for the Barrentine cause of action and funds resulting from the Barrentine settlement. This is based on her theory that both the claim and thereby the settlement funds were property of the bankruptcy estate. Penner argues that the Barrentine cause of action accrued in December of 2000 when the joint venture between AMCOT-ACSI II and Barrentine was formed. At this same time, AMCOT-ACSI II's charter had been forfeited, thus, according to Penner, Spradling was operating as a sole proprietorship under the "ACSI" name. First, there is no evidence establishing when the Barrentine cause of action accrued. The Court cannot conclude it accrued at the time the joint venture was formed. Second, temporary forfeiture of a corporation's charter, as with AMCOT-ACSI II here, does not, under Texas law, cause the corporation's assets to somehow immediately vest in its shareholders. *See First Trust Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230 (Tex. App.–Dallas 2005). The evidence simply does not support a finding that the Barrentine cause of action was personally owned by Spradling at the time his bankruptcy was filed.

Penner next argues that the Barrentine cause of action and settlement proceeds were property of the bankruptcy estate because Spradling used AMCOT-ACSI II as his alter ego and thus the assets of AMCOT-ACSI II must be treated as Spradling's assets. Penner essentially contends that Claus, acting in concert with Spradling, was fully aware of what Spradling was doing and thus he also had a duty to disclose and account for the Barrentine cause of action and settlement. At the time Spradling's involuntary was filed, January 2, 2002, AMCOT-ACSI II was a corporation owned by Spradling; AMCOT-ACSI II and Barrentine were engaged in a joint venture that had been initiated in December, 2000. The Barrentine cause of action may have existed at the time of the filing of the involuntary as Claus was contacted by Spradling regarding filing suit in December, 2002, and then filed suit on April 3, 2003. It follows from Penner's

- 14 -

argument that any obligation of Spradling to list the Barrentine cause of action in his bankruptcy schedules must arise from this Court now finding that AMCOT-ACSI II was Spradling's alter ego. As noted, an alter ego claim is remedial rather than a substantive cause of action. Penner's argument blends the fraud and breach of fiduciary duty claims with her alter ego claim – the substantive claims with a remedial claim – and asks this Court to impose liability on Claus.[3] The problem with Penner's theory is that the blending of these concepts as a means to impose liability on the attorney for the alleged bad actor is, as far as this Court can determine, unprecedented. Penner has failed to cite to any case law and the Court has found no case law that imposes liability on an attorney under the facts and circumstances similar to those before the Court. While the Court is not prepared to hold that an attorney (or accountant) cannot be liable to a third-party who is not his client,[4] the Court cannot conclude that Claus had a duty to Penner and is thus liable to Penner under the facts of this case. At the time the settlement was made and funded, Claus was not operating under any specific knowledge through, for example, a court ruling, that AMCOT-ACSI II was Spradling's alter ego. The settlement funds passed directly from Barrentine to AMCOT-ACSI II's account. The evidence does not support an inference that there

---

[3]Penner must combine these legal theories to create any basis for recovery against Claus. A successful alter ego claim results in either the control person having to answer for the debts of the entity controlled or, in a case of reverse piercing, the assets of the controlled entity having to answer for the debts of the control person. *See Zahra Spiritual Trust v. U.S.*, 910 F.2d 240, 245-46 (5th Cir. 1990). Penner seeks the latter result. As a remedy, it does not logically follow that alter ego somehow makes Claus, a third-party who is asserted to have assisted Spradling, liable to Penner the trustee. In addition, the Court recognizes that the corporate shield may be disregarded if a corporation was used as a means to perpetuate a fraud. *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994). The Texas Supreme Court has characterized such a claim as one separate from alter ego; it is a claim based on constructive fraud rather than intentional or actual fraud. *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986). Again, the Court fails to see how such a theory extends liability beyond the control person or the controlled entity.

[4]Claus's attorney did argue that he was not liable under some principle of "attorney immunity." The Court is not aware of any such principle of law and was not cited with supporting case law for such proposition.

was any understanding or agreement between Claus and Spradling to commit a fraudulent or deceitful act. To be sure, Claus was aware of Spradling's interest in AMCOT-ACSI II, the Barrentine cause of action, and the disposition of the funds derived from the Barrentine settlement. Knowledge alone does not impute liability to Claus, however. As set forth above, the real failure on Spradling's part was his failure to properly disclose in his bankruptcy schedules his ownership of AMCOT-ACSI II. Had he done so, it would have arguably provided Penner with sufficient information to make inquiry concerning the assets of AMCOT-ACSI II. Spradling's failure in this regard is what effectively concealed the Barrentine lawsuit. Claus did not participate in any fashion in Spradling's preparation of his bankruptcy schedules.

Penner's claims against Claus are too tenuous. Penner has cited no case law and this Court is not aware of any case law that would support a finding of liability against Claus as to Penner the trustee under the facts and circumstances of this case. Recovery against Claus is denied. All other relief requested by the parties is denied.